Re Well's Estate v. Congregational Church.

## *RE* OLIVER WELLS' ESTATE *v.* THE CONGREGATIONAL CHURCH AT UNDERHILL FLATS, APPT.

*Homestead, when widow is barred of by provisions of will. Election.*

1. A widow is not deprived of her homestead by accepting the provisions of her husband's will unless such was clearly the testator's intent. If there is a reasonable doubt she should have the benefit of it.

2. But where the property of the testator consisted of a dwelling, out-buildings and forty acres of land, worth in all $1800 and $1200 in personal estate, of which the entire use was given to the widow for her support during her life, then to his daughter for life, and at her decease without heirs of the body to the appellant, the real estate to be used as a parsonage, *held,* that it was clearly the intent of the testator that his widow should take this bequest in lieu of homestead.

3. And the widow having taken the use of the entire estate during her life, her heirs cannot claim the benefit of her homestead rights, although she deceased before she was called upon to elect between her homestead and the provisions of the will.

This was an appeal from a decree of the Probate Court for the District of Chittenden, decreeing that Rebecca Wells had a homestead in the estate of her husband, Oliver Wells, and ordering the same set out. Heard at the September term, Chittenden county, 1889, Munson, J., presiding, upon an agreed statement of facts. Judgment *pro forma* reversing the decree of the Probate Court, and adjudging that the said widow had not homestead. The Congregational Church of Underhill is the appellant, and the administrator of Rebecca Wells, appellee.

The appellee excepts.

Oliver Wells died in November, 1887, and his widow, Rebecca, December 13th, 1888. The will of Oliver Wells was

probated November 28, 1887, but no executor qualified until January 16, 1889.

The remaining facts appear in the opinion.

*W. L. Burnap*, and *J. J. Monahan*, for the appellee.

The widow did not during her lifetime elect whether she would take her homestead and dower or under the provisions of the will. Hence, her estate may elect now. *Hathaway* v. *Hathaway*, 44 Vt. 658.

The fact that she continued in the use of the property does not constitute an election. She was entitled to the use of it until an executor or administrator was appointed on her husband's estate, which was not until after her death.

The homestead belonged to her as a matter of right, and she could only be divested of it by her election. In this case she never made any election, and there was nothing in the will which required her to make one, since there was nothing to indicate that the bequest was to her in lieu of homestead. *Haven* v. *Sackett*, 15 N. Y. 372; I Pom. Eq. Jur. 546.

*L. F. Wilbur*, for the appellant.

The widow having entered upon the estate given her by the will and enjoyed it, her representatives cannot now repudiate her election and claim a homestead. *Sanford* v. *Jackson*, 10 Pai. Ch. 269; *Merrill* v. *Emery*, 10 Pick. 510; *Jones* v. *Powell*, 6 John. Ch. 194; *In re* Zahrt, 94 N. Y. 610.

In this case the provision of the will and homestead are so inconsistent that the widow cannot take both. *Meach* v. *Meach's Estate*, 37 Vt. 419; *Daly* v. *Vinal*, 1 Met. 57; *Haven* v. *Haven*, 1 Sandf. Ch. 329; *Pemberton* v. *Pemberton*, 29 Mo. 409; *Duncan* v. *Duncan*, 2 Yates 302; *Roadley* v. *Dixon*, 3 Russ. 201; *Herbert* v. *Wren*, 7 Cranch. 372, 379; *Anthony* v. *Anthony*, 55 Conn. 256; *Alling* v. *Chatfield*, 42 Conn. 276; 2 Redf. Wills

752, 753; *Callahan* v. *Robinson*, 3 L. A. R. 597; *Stark* v. *Hunton*, 1 Sax. Ch. 216; *Savage* v. *Burnham*, 17 N. Y. 577; *Tobias* v. *Ketchum*, 32 N. Y. 319; *Vernon* v. *Vernon*, 53 N. Y. 351; *Dodge* v. *Dodge*, 31 Barb. 413; *Lord* v. *Lord*, 23 Conn. 327; *LeFever* v. *Toole*, 84 N. Y. 95.

The right to waive the provisions of the will was personal to the widow, and cannot be exercised by her heirs or representatives after her death. 2 Redf. Wills 764, §33; *Welch* v. *Anderson*, 28 Mo. 293.

The opinion of the court was delivered by

TAFT, J. The question in this case is, was the widow of Oliver Wells entitled to homestead in his estate, or, was she barred therefrom by having accepted the provisions of his will. It is needless to consider the many authorities cited in behalf of the appellant, as the rule applicable to the case is well settled in this State and tersely stated in *Meech* v. *Meech*, 37 Vt. 414. *In re* Hatch's Estate, 62 Vt. 300. To deprive the widow of a homestead it must clearly appear that the testator intended she should accept the provisions of the will in lieu of it; if the intent is doubtful she is given the benefit of the doubt, and takes it, in addition to the gifts named in the will. With this rule in mind, what construction shall we give the instrument in question? The estate consisted of a dwelling house, with outbuildings and forty acres of land, valued at eighteen hundred dollars, and twelve hundred dollars in personal property. The house was occupied by the testator, at the time of his death, as his dwelling. By his will he gave a life estate in all his property, with power of disposal if required for her support, to his widow, and after its termination, a life estate to his daughter, and after the decease of the latter, leaving no heirs of her body, the property was given the appellant, upon condition that the real property "be used as a parsonage." Considering the description, value, and use of the property, its occupancy by but one family as a residence, it is

evident that but one dwelling place can be carved out of the premises, and if the widow is given a homestead therein, as it must be of the value of five hundred dollars, and commissioners are inclined in its segregation to be liberal, it is plain that after one is set out, but little or nothing will be left for a parsonage save the outbuildings and land. It is insisted by the appellee that the word parsonage may be applied to land alone, and so not include the dwelling house. Its ecclesiastical meaning was the " glebe (or land) and house" belonging to a parish, appropriated to the maintenance of the incumbent or settled pastor of a church, but its modern general signification is in the sense of its being the residence of the parson, and it may be with land or without it. In consideration of these facts, we have no doubt that the testator intended the homestead should pass under the will, in the contingency named, to the church; in other words, he supposed he had, in case his issue failed, willed it to them. He was evidently much attached to his church and desired that the roof which, during their lives, had sheltered himself and family, should, when the latter became extinct, and for all time, serve the same purpose for the parson of his church, and we think it inconceivable that he intended a homestead should be carved out of his little abode and pass into the possession of strangers, while the parson of his church should reside in the outbuildings, or, on the glebe. The intent of the testator that his wife should not take a homestead clearly appears.

The appellee claims that the widow died before she was called upon to elect between the provisions of the will and her rights under the law. It is agreed that she took possession of, and used and enjoyed all the real and personal property devised and bequeathed to her, and used the profits and avails thereof. This was more than she was entitled to, in case her husband had died intestate, and we think constituted an acceptance of the gifts under the will, and that after having enjoyed the benefits given her by the will, she could not waive its provisions and claim her

right in respect of an intestate estate. When a widow receives the legacies given her by a will, she. should not be permitted afterwards to claim in opposition to it. *In re* Hatch's Estate, *supra.* No disposition was made of the homestead by the testator and there was no intent on his part to deprive the widow of it. She was, therefore, entitled to it. In *Meech* v. *Meech*, *supra*, the homestead was devised to a son, and the widow was held barred by taking the legacies given her in lieu of it. Such is the construction we give the will under consideration, and the result is,

*Judgment affirmed and ordered certified to the Probate Court.*

Munson, J., did not sit, having expressed his opinion below.