Argued July 16, decided July 30, 1912.

## REHFIELD v. WINTERS.
[125 Pac. 289.]

APPEAL AND ERROR—WEIGHT OF EVIDENCE.
    1.  The weight and value of the evidence was for the trial court, in an action at law tried without a jury.

EVIDENCE—COMPETENCY.
    2.  Evidence is not incompetent merely because it is weak.

FRAUD—ACTION FOR DAMAGES—SUFFICIENCY OF EVIDENCE.
    3.  In an action for damages from being induced by fraud to part with property in exchange for worthless bonds, evidence that interest coupons

had been detached from the bonds, to corroborate defendant's false statement that the interest was always promptly paid, sustained a finding that defendant knew the bonds to be of no value.

ELECTION OF REMEDIES—FINALITY OF ELECTION.
4. Where, in attempting to make an election, one commences an action in ignorance of substantial facts which proffer an alternate remedy, his action is not binding, but, when informed, he may adopt the other remedy, provided he acts with reasonable dispatch.

JUDGMENT—RES ADJUDICATA.
5. Where plaintiff's action in equity to rescind a sale contract for fraud was objected to by defendant as not being the proper remedy, and a non-suit taken, defendant could not set up such action in bar of plaintiff's subsequent action for damages from such sale.

ESTOPPEL—POSITION IN JUDICIAL PROCEEDINGS.
6. Counsel cannot induce the court to adopt an erroneous rule when it operates in his favor, and be heard to object to the application of the same rule when it militates against him.

APPEAL AND ERROR—DECISION.
. 7. Under Section 3, Article VII, of the Constitution, as amended (Laws 1911, p. 7), the Supreme Court will affirm a judgment which it deems correct, notwithstanding any error committed during the trial.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by E. T. Rehfield against L. S. Winters. From a judgment in favor of plaintiff, the defendant appeals.

The complaint alleges, in substance, that on the 17th day of January, 1910, plaintiff, who owned a stock of groceries, store fixtures, and furniture, agreed with defendant to sell the same for $1,050; that, for the purpose of cheating and defrauding plaintiff, defendant represented that he was the owner of a second mortgage, 6 per cent gold bond, issued by the Churubusco Water & Light Company of Churubusco, Ind., for the sum of $200, being No. 11, dated May 1, 1899, upon which the interest had been paid to November 1, 1909, and a first mortgage, 5 per cent bond of the North Jersey Gas Company of Patterson, N. J., for $500, being No. 329, dated February 1, 1901, upon which the interest had

been paid to August, 1909; that the bonds were each secured by a mortgage covering all of the property of the respective companies, and each worth its full face value; that defendant had collected the interest thereon for the last semi-annual payments; that defendant well knew such representations to be false and fraudulent; that the bonds were of no value, and that they were not liens upon any property; that, relying on defendant's representations, plaintiff sold his stock of groceries and furniture, and received the bonds on account thereof at a valuation of $700; that he was thereby damaged in said sum.

Defendant answered, denying the allegations of the complaint, and further set forth that in February, 1910, plaintiff commenced a suit against defendant to rescind the contract of sale, and to be restored to the possession of the property, based upon the same facts as are alleged in the complaint. The gist of the answer is as follows:

"That said plaintiff, in and by the commencement of said suit, by the filing of said complaint hereinbefore set forth, chose and elected to proceed against this defendant by rescinding said contract for the sale of said personal property and securing the possession of said personal property. * * "

It is further alleged that defendant, Winters, appeared in the suit and filed his answer; that on the 1st of June, 1910, upon the trial thereof, plaintiff offered evidence in support of his complaint, which was objected to by the defendant's attorneys; that the objection was sustained by the court, and a judgment rendered in favor of the defendant, dismissing the plaintiff's complaint; that plaintiff, having elected to so proceed, cannot now require defendant to respond in damages. The complaint in the equity suit was set out *in haec verba* in defendant's answer.

Plaintiff filed a general demurrer to the defendant's

further and separate answer, which was sustained. The cause was tried by the court, without the intervention of a jury. At the close of plaintiff's testimony, defendant moved the court for a nonsuit, which motion was denied. This ruling the defendant assigns as error. The circuit court made findings of fact in favor of plaintiff, substantially as alleged in the complaint, and rendered judgment thereon against defendant for the sum of $739.29.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Jeffrey & Lenon,* with an oral argument by *Mr. Charles E. Lenon.*

For respondent there was a brief over the names of *Messrs. Masters, Brice & Masters,* with an oral argument by *Mr. W. Y. Masters.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. Upon an appeal from a judgment in an action at law, where the cause was tried by the court, without a jury, we can only examine the record to see whether or not there is any competent evidence to support the findings of the trial court. The weight and value of the evidence were for that court. *Salem Traction Co.* v. *Anson,* 41 Or. 562 (67 Pac. 1015: 69 Pac. 675) ; *Salem* v. *Anson,* 40 Or. 339 (67 Pac. 190: 56 L. R. A. 169: 91 Am. St. Rep. 485) ; *Astoria Railroad Co.* v. *Kern,* 44 Or. 538 (76 Pac. 14) ; *Courtney* v. *Bridal Veil Box Factory,* 55 Or. 210 (105 Pac. 896) ; *Sun Dial Ranch* v. *May Land Co.* 61 Or. 205 (119 Pac. 758).

Considering the evidence from this point of view, E. T. Rehfield, plaintiff, testified, in substance: That at the time of the transaction Winters offered to give the bonds in payment of $700 of the purchase price. That Winters stated that he had had the bonds for some time, and that the town in which one of the bonds was issued

had grown, and was getting along fine; also that the interest was always paid promptly, and that the bonds were just as good as gold. That Winters said:

"Why, I know that they are good; if they are not good, I am here to make them good. I am responsible."

Plaintiff states that at the time of the sale he did not make any effort to find out whether the bonds were good, but took defendant's word for it; that when he was informed of their worthlessness, and of the fact that no interest had ever been paid thereon, he consulted with his attorney and proceeded to take possession of the store; that he afterwards learned that Mr. Winters owned considerable property. Mrs. E. T. Rehfield testified, substantiating her husband's evidence as to part of the statement made at the time of the negotiation.

The deposition of Elmer E. Gandy, a banker, who had resided in Churubusco, Whitney County, Indiana, for 33 years, was read in plaintiff's behalf. It showed that he was acquainted with the business of the Churubusco Water & Light Company, which was organized under the laws of Indiana, for the purpose of taking over the water and light plant of the town of Churubusco; that the company continued business for only one or two years; that he was familiar with the property owned by the corporation, but that they did not own any now that he knew of; that he identified the $200 bond; that the interest coupons had been dishonored at the bank at different times; that the bond is worthless, and never had any market value.

The deposition of Charles C. Scott, an attorney at law, of Patterson, N. J., and witness for plaintiff, is to the effect that he had always resided in the above city; that he was one of the incorporators of the North Jersey Gas Company, a corporation organized under the laws of the State of New Jersey; that he had offices in the

same suite with the company's attorney; that he identified
the $500 bond; that he had no recollection of any interest
having been paid, and that the bond had no market value
at that time; that the company was organized to do
business in the City of Patterson, N. J., but that it had
never supplied the city with any gas, or, to the best of
his knowledge, any other place.

Defendant Winters testified in part that he purchased
the bonds for value, and that he told plaintiff that he
did not know their value, but that he could inquire in
regard thereto; that he carried them just as he did money;
that he gave plaintiff the name of the man from whom
he got the bonds.

2. It is first contended by counsel for defendant that
there was no legal evidence showing that the representa-
tions of defendant were false. The last two witnesses
resided at the respective places where the bonds were
issued. They were business men, acquainted with the
corporations, and likely to know of the latter's property.
Their evidence is to the purport that neither of these
companies had been in existence for a long time before
the bonds were sold to plaintiff, and tends to show that
the bonds were worthless. One of these witnesses was
a banker, who appeared to know the value of bonds in
financial circles. Their testimony was uncontradicted.
While corporations are a legal entity, their property is
usually visible, like that of a natural person. The circuit
judge, as trier of the facts, might well have believed that
neither of the corporations had any property, as none
could be found; that the interest had not been paid as
represented, and that the bonds were worthless. The
real objection to this evidence goes to the weight, and
not to the competency, of the same. *Van De Wiele* v.
*Garbade,* 60 Or. 585 (120 Pac. 752).

3. It is further contended that the evidence does not
show that the defendant knew that the bonds were value-

less. If a piece of clay, veneered with gold, should be sold by one person to another, for a considerable value, that circumstance alone would show that the person negotiating the sale knew the quality of the article. In this case, while the bonds were not veneered, they were trimmed up for dress parade, by carefully detaching the coupons, in order to corroborate the statement of the defendant that the interest was always paid promptly, when, in fact, it had not been paid at all. This circumstance was, we think, some evidence that defendant knew the bonds to be of no value, and to find otherwise would be impeaching the intelligence of defendant. There is other indicia of fraud in the transaction, which need not be specified. The trial judge heard the testimony of the witnesses and made the findings of fact. There is competent evidence to support those findings, and they should not be disturbed for want of evidence.

4. It is also ably contended by the learned counsel for defendant that the plaintiff, having previously elected, by the commencement of the equity suit, to stand upon a rescission of the contract of sale, should not now be allowed to affirm the contract and adopt an entirely different and opposite course of procedure. The prosecution by plaintiff of an action at law to judgment, or a suit in equity to decree, with knowledge of his rights and of the facts, is held to be a conclusive election of the tribunal in which the action or suit is prosecuted, which will bar subsequent proceedings for the same cause in the other tribunal. 15 Cyc. 264.

If, in attempting to make an election, one commences an action in ignorance of substantial facts which proffer an alternate remedy, and the knowledge of which is essential to an intelligent choice of procedure, his action is not binding. He may, when informed, adopt a different remedy. But if he does not do this with reasonable dis-

patch, he will be deemed to have waived the right, and his original act will ripen into a bar. 7 Enc. Pl. and Pr. 366; 15 Cyc. 262; *Fuller-Warren Co.* v. *Harter,* 110 Wis. 80 (85 N. W. 698: 53 L. R. A. 603: 84 Am. St. Rep. 867) ; *Kinney* v. *Kiernan,* 49 N. Y. 164; *Agar* v. *Winslow,* 123 Cal. 587 (56 Pac. 422: 69 Am. St. Rep. 84) ; *Mankin* v. *Mankin,* 91 Iowa 406 (59 N. W. 292) ; *Lentz* v. *Flint Ry. Co.,* 53 Mich. 444 (19 N. W. 138) ; *Bach* v. *Tuch,* 47 Hun (N. Y.) 536; *Bach* v. *Tuch,* 126 N. Y. 53 (26 N. E. 1019).

5. The records in the suit commenced by plaintiff are not all before us. From the record in the case at bar, it appears that upon the hearing in the equity suit the defendant made objections thereto, and evidently contended that such remedy was not available to the plaintiff. A nonsuit was taken by the plaintiff. Whether or not the defendant's contention was correct, we need not decide. The circuit court held that such contention was correct, and, in effect, that plaintiff could not obtain relief in equity. The defendant, having obtained such ruling, cannot now well claim that it was erroneous. The plaintiff testifies, and it is not disputed, that at the time of the commencement of the suit in equity he knew nothing about Mr. Winters' ability to make the bonds good; and that when he was informed that the same were valueless he proceeded to take possession of the store. He then commenced suit, and in his complaint prayed that the defendant be restrained from disposing of the property, pending the determination thereof. This appears to be one of the main purposes of the suit.

The case of *Brady* v. *Daly,* 175 U. S. 148 (20 Sup. Ct. 62: 44 L. Ed. 109), was an action brought to recover damages for the violation of a dramatic copyright. Daly first brought a suit in equity, in which he prayed for an injunction, and asked for an accounting of money and profits received by defendant. The motion for an injunc-

tion was denied. It was claimed that by first proceeding in equity the plaintiff made an election to recover profits, which effectually barred him from a recovery of damages. At page 160 of 175 U. S. (at page 67 of 20 Sup. Ct.: 44 L. Ed. 109), of the opinion, the court, speaking through Mr. Justice PECKHAM, said:

"The equity action was brought to enjoin the defendant from performing the play of After Dark, with the railroad scene in it, taken from the plaintiff's play, Under the Gas Light, and the injunction was asked for on the ground that plaintiff's injuries could not be accurately ascertained or computed, and compensation for such injury could not be made by damages; and as a portion of the relief complainant asked that the defendant be decreed to render a full and true account of all money and profits received by him. The decree in that case, however, did not direct the master to ascertain anything in regard to profits, no evidence was offered upon that subject, no finding was made thereon, and upon the coming in of the master's report no final judgment or decree for profits was ever asked or rendered. In view of these facts, we think there was no election of an inconsistent remedy by the plaintiff in the action which would bar him from the maintenance of this action for the recovery of damages. * * "

The relief sought by Rehfield in this action is practically the same as in the first suit. See *Smith* v. *Bricker,* 86 Iowa 285, 290 (53 N. W. 250).

6. All of the testimony in the case under consideration is attached to the bill of exceptions. From a consideration of all the record submitted, we are of the opinion that the judgment of the lower court was such as should have been rendered in the case. If there was error in sustaining the demurrer to the new matter in defendant's answer at the instigation of counsel for defendant, he should not now be permitted to take a position incon-

sistent with his former contention. *State* v. *Hassing*, 60 Or. 81 (118 Pac. 195). If plaintiff had no grounds for equitable cognizance, then he is entitled to his remedy at law. We do not think the case should be reversed for the reason assigned. Apparently defendant desired to try the issues in a law action, where he could have the benefit of a jury trial. This was done.

7. Under the provisions of Article VII, Section 3, of the Constitution of this State, as amended (Laws 1911, p. 7), the judgment of the lower court should be affirmed; and it is so ordered.          AFFIRMED.