Argued May 12; modified June 16; rehearing denied
September 10, 1936

# WINSLOW *v.* BECKER ET AL.

(58 P. (2d) 620)

*H. T. Botts,* of Tillamook, for appellants.

*W. G. Hare,* of Hillsboro (Bagley & Hare, of Hillsboro, on the brief), for respondent.

KELLY, J. On May 4, 1932, Henry Becker died testate in Tillamook county, Oregon. The defendant, Carl Becker, is the son, and the defendant, Mary Becker, is the widow of Henry Becker, deceased. Approximately one year after said defendant and Henry Becker were married, the said Henry Becker made and executed his last will and testament bearing date of September 30, 1931. The second and third clauses of said last will and testament are as follows:

"Second: I give to my wife, Mary Becker, $2500.00 in cash, the bedroom suite, davenport, big chair, and washing machine, now in our home at Tillamook City; this provision for my wife to be in lieu of dower in any real estate, which I shall own at the time of my death. The $2500.00 in cash is to be paid to her by my representatives from cash on hand at the time of my death, or as soon as other property is turned into cash, this payment to be made without awaiting the final settlement of my estate, as I have ample means to provide for this.

"Third: I devise and bequeath to my son, Carl Becker, the property which I now occupy as a residence in Tillamook City, being Lot Six (6) in Block Four (4) of Maple Grove Addition to Tillamook City, Oregon; also my automobile."

There were other bequests to be paid from certain specified corporate stock and certain notes secured by mortgages; but no bequest of the household goods or furniture except as stated in the second clause of said will.

The will was duly admitted to probate. The defendant, Mary Becker, received the amount of money bequeathed to her, namely $2,500, and also the household furniture expressly given to her by the will.

On or about the 18th day of July, 1932, after two or more conferences upon the subject, defendant Mary Becker employed the plaintiff, who is, and for many years has been, a practicing attorney at Tillamook, to institute and prosecute legal proceedings upon a contingent fee basis for the purpose of securing additional property or money for her other than the money and property given her by the terms of said will.

At said time the following memorandum was executed by said widow and plaintiff, the same being in the form of a letter, addressed to plaintiff:

"July 18th, 1932.

"Mr. Geo. P. Winslow,
Attorney at Law,
Tillamook, Oregon.
Dear Sir:

This will confirm our understanding and agreement in regard to my employment of you to represent me in recovering from the Henry Becker Estate which is now being probated in Tillamook County, Oregon, all money and property that I may be entitled to under the law as surviving widow of said Henry Becker, and that is I am employing you to represent me as my attorney with the understanding that you are to receive as compensation for your services fifty per cent of whatever amount of money or property that I may receive from said Henry Becker Estate in addition to

the $2500.00 in cash and furniture which I have already received; that is, if I do not recover any further money or property, you are to receive nothing for your services, but if you recover additional money or property for me or if I receive in any way additional money or property by settlement, or otherwise, from said Henry Becker Estate, you are to receive fifty per cent thereof, and I hereby assign and transfer to you fifty per cent of any further money or property that I am now entitled to receive, or which I may hereafter receive from said Henry Becker Estate.

It being, however, expressly understood that you are to receive no part of the $2500.00 in cash which I have received, or the furniture.

Yours very truly,

her

Mary   X   Becker

mark

Witness:

Alma H. Williams.

I hereby accept the above proposition and agree to be bound thereby for my compensation.

Geo P Winslow"

On the 3d day of August, 1932, defendant Carl Becker procured a transfer by quitclaim deed from defendant Mary Becker to said Carl Becker and his wife, of said real property described in said above-quoted clause number three of said will, which said real property comprised and constituted the only piece or parcel of real property of which said Henry Becker died seized, and at said time said Carl Becker also procured a transfer from said Mary Becker to said Carl Becker and his wife of all the household furniture and equipment not bequeathed by said will.

The appraised value of said household furniture was $500.

Plaintiff contends that in equity there was an assignment to him by defendant Mary Becker of one-half of said real property and one-half of the house-

hold furniture exempt from execution. Plaintiff bases this contention upon the claim that, if defendant Carl Becker had not prevented it by securing the transfers thereof, as above stated, plaintiff could and would have secured an order of the court declaring said real property to be the homestead of said Mary Becker and a further order setting aside to Mary Becker the said household furniture as exempt property; and that plaintiff thereupon would have been entitled to one-half of said homestead and exempt household furniture.

Defendants urge that the facts alleged in the complaint fail to disclose any ground upon which plaintiff is entitled to invoke the jurisdiction of a court of equity.

This question is presented by objection to the introduction of any testimony and motions to strike same.

■ We think that the employment of plaintiff by defendant Mary Becker to institute legal proceedings, the agreement that plaintiff should receive one-half of the property recovered in such proceedings, such a breach of that agreement induced by defendant Carl Becker as to render it impossible for plaintiff to prosecute the contemplated proceedings, the widow's right of recovery of property not bequeathed, and the acquirement and possession by defendant Carl Becker of such property, constitute ground for the assertion of an equitable lien by plaintiff for his interest therein.

The equity arises, not upon the ground of the mere settlement of differences over the rights of the parties in the property of Henry Becker's estate but by reason of the nature of plaintiff's claim.

This principal is announced in section 168 of Vol. 1 Pomeroy's Equity Jurisprudence (4th Ed.), and was applied in *Stott v. Franey,* 20 Or. 410, 414 (26 P. 271, 272).

We quote from that case:

"It is first claimed by appellant that this suit can not be maintained for the reason its object is purely legal—that is, to recover the possession of the warrants in controversy; but this objection overlooks one element in the plaintiff's case. At the time of the assignment of the warrants they were not in existence, and such assignments therefore could not create a strictly legal title. At most it could only create an equity; that is, a right or interest over which courts of equity have been accustomed to exercise jurisdiction, and in proper cases to protect and make effectual according to the intention and rights of the parties. The principle is stated in 1 Pom. Eq. Jur. Sec. 168, as follows: * * * 'The assignee of an expectancy, possibility or contingency acquired at once a present equitable right over the future proceeds of the expectancy, possibility or contingency, which was of such a certain and fixed nature that it was sure to ripen into an ordinary equitable property right over those proceeds as soon as they came into existence by a transformation of the possibility or contingency into an interest in possession. There was an equitable ownership or property in abeyance, so to speak, which finally changed into an absolute property upon the happening of the future event. Equity permitted the creation and transfer of such an ownership.' After stating the effect of modern legislation upon this rule, the learned author continues: 'Whatever may be the effect of these statutes in abridging or rather in removing occasion for the jurisdiction of equity, it is plain that the jurisdiction must still exist in the cases where a thing in action or demand, purely equitable in its nature, is assigned, and where the assignment itself is equitable, that is, does not operate as an assignment at law, and where any species of possibility or expectancy not within the scope of the statutes is transferred.' And 2 Am. Law Reg. U. S. 527, recognizes this rule of law. This ancient head of equity jurisdiction is not destroyed by any statute that I am aware of, and must therefore still exist, and I think the case made by the plaintiff falls precisely within it.''

None of the essential facts is in controversy. It is only necessary to apply the principles of law governing them.

The execution of the contract between plaintiff and defendant Mary Becker, the determination of that contract by her at the instance of her codefendant, the transfer of the property in suit, both real and personal, to, and the possession thereof by, defendants, are all admitted.

It is true that defendant Carl Becker agreed with the widow, Mary Becker, to pay plaintiff for the services rendered to her by him. It is not clear from the record that said defendant made it known to plaintiff that the assumption of this obligation by him was in writing so that it would not be within the statute of frauds. Even if he did, however, that would not deprive plaintiff of his equitable remedy. To do so would partake of a violation of the maxim that a party may not take advantage of his own wrong.

The ground upon which plaintiff intended to recover the real property as he claimed when he made the contract with defendant Mary Becker, and now claims, is that said real property was a homestead and as such not devisable.

■ Plaintiff urges that the statute of Oregon, pertaining to homestead is different from the statutes of the other jurisdictions. It is true that the language is not exactly the same in the statutes of other states as that which the Oregon statute employs; but, in some instances at least, the language of the homestead law in other states is more easily to be construed as rendering the homestead nondevisable than ours and yet in those jurisdictions such construction is withheld.

Missouri is an example of this. There the homestead statute contains the following clause:

"The husband shall be debarred from and incapable of selling, mortgaging, or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void: Provided, however, that nothing herein contained shall be so construed as to prevent the husband and wife from jointly conveying, mortgaging, alienating or in any other manner, disposing of such homestead, or any part thereof." 2 Rev. Stat. Missouri, 1909, § 6704.

This statutory provision has not deterred the court from holding that the provisions of a will inconsistent with the right to claim a given piece of property as a homestead has the effect of requiring a beneficiary named in such will to elect whether to renounce the will and claim the homestead or accept the devise or bequest under the will. In *Burgess v. Bowles,* 99 Mo. 543 (12 S. W. 341, 13 S. W. 99), it is held that in order to deprive the widow of her homestead rights she must have accepted under the will of her husband property greater in amount than that to which she would otherwise have been entitled by law. *Ball v. Ball,* 165 Mo. 312 (65 S. W. 552), and *Stoepler v. Silberberg,* 220 Mo. 258 (119 S. W. 418) comment upon this rule and seem to reaffirm it, but, in the first of these two Missouri cases, there was nothing in the will indicating an intention to exclude the right of the wife to the homestead and it was given to her; while, in the latter case, the provisions of the will were repugnant to the widow's claim of homestead and her claim thereto was denied. *Burgess v. Bowles,* supra, and the two other Missouri cases, just cited, were decided upon an earlier statute than the one above quoted. *Jenkins v. Jenkins,* (Mo. App.) 234 S. W. 365 is governed by the statute quoted herein; and, in that case, the requirement that a provision greater in value than the homestead be made for the widow in order to put her to an election

is expressly rejected where the intention to exclude the homestead right is clearly indicated by the terms of the will.

Moreover, this court has expressly held that a homestead is devisable: *Leet v. Barr,* on rehearing, 104 Or. 51, 57 (206 P. 548). In that Mr. Justice RAND reviews the homestead legislation of this state and quotes and construes the opening clause of section 3-206, Oregon Code 1930, which is the same as that of section 226, Oregon Laws. We quote:

"Section 226 provides: 'When any homestead shall have been disposed of by the last will and testament of the owner thereof, the devisee shall take the same.'

"8. This clearly shows that the legislature intended that a homestead should be subject to devise as freely and to the same extent as any other kind or class of real property in this state, and we are bound to give effect to these provisions." *Leet v. Barr,* supra.

■ It is urged here as in *Leet v. Barr,* supra, that the provisions of section 11-402, Oregon Code 1930 (section 1234, Oregon Laws), control the disposition of the homestead.

In *Leet v. Barr,* supra, this contention is declared to be untenable. It is there held that sections 225 and 226, Oregon Laws, being a part of a later act, must prevail over section 1234, Oregon Laws, so far as the provisions of those two sections are in conflict with the provisions of said section 1234.

The subsequent amendment of said section 1234 (section 11-402, Oregon Code 1930) by adding a curative clause thereto, did not change the effect so that section 1234 prevails over said sections 225 and 226, Oregon Laws: *Overland v. Jackson,* 128 Or. 455 (275 P. 21); *Slattery. v. Newell,* 115 Or. 22 (236 P. 268); *Brizzolari v. Brizzolari,* 129 Or. 307 (275 P. 17).

In 1927, section 226, Oregon Laws, was amended by adding the following:

"And provided further, that nothing herein contained shall be construed as preventing or limiting the court or judge from setting apart for the widow, widower or minor children of the deceased the homestead as provided in section 11-402, Oregon Code."

■ This amendment must be construed in the light of the provisions of the original section. As stated, these provisions expressly recognize the right of the owner of a homestead to devise it. The amendment does not alter or change that right. The effect of a devise thereof is not changed. The statute as amended in and of itself does not abrogate the right of the surviving widow to have the homestead set off to her; but her election to take under the terms of a will which devises the homestead to others does have that effect. 22 A. L. R. 512, and authorities there cited: *Miller v. Fidelity Banking Trust Co.*, 164 Tenn. 149 (46 S. W. (2d) 516), and authorities there cited.

For these reasons we hold that after electing to accept the bequest provided for her in her husbands will Mary Becker was not entitled to the property therein devised to Carl Becker and that such property should not have been declared to be her homestead.

We find nothing however in the will which is inconsistent with the widow's right to have the exempt household furniture set off to her. We think that plaintiff would have been entitled to one-half of such property if his contract with the widow had not been terminated.

Giving effect to the contract of defendant Carl Becker to pay plaintiff for his services, we hold that plaintiff is entitled to judgment against said defendant Carl Becker in the sum of $150, which is one-

half of the statutory exemption in household furniture, and, further, that plaintiff should be declared to be the owner of a lien in said sum of $150 upon said household furniture and that said lien should be foreclosed, said property sold and the proceeds applied upon said judgment.

It is therefore ordered that this cause be remanded with directions that the decree herein be modified to conform to the foregoing, and it is further decreed that defendants recover from plaintiff their costs and disbursements on this appeal.

CAMPBELL, C. J., and BEAN and BELT, JJ., concur.